UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

```
RUFUS DAVIS, JR.                              CIVIL ACTION

v.                                            NO. 06-2888

EGL EAGLE GLOBAL LOGISTICS, LP                SECTION "F"
```

ORDER AND REASONS

Before the Court is defendant's motion to dismiss. For the reasons that follow, the motion is GRANTED.

**Background**

Rufus Davis, Jr. filed this putative class action against EGL Eagle Global Logistics, LP, seeking damages on behalf of all independent contractor-drivers who were unpaid (or underpaid) for their services after contracting with and providing freight forwarding services to EGL in the United States within the past ten years.

In September 2003, EGL and Davis entered into a contract entitled EGL Eagle Global Logistics, LP Agreement for Leased Equipment and Independent Contractor Services (Pick-Up & Delivery). (The Agreement was terminated in December 2004). By this Agreement, plaintiff was deemed an independent contractor to perform transportation services for EGL. The Agreement provides that Davis would provide delivery services and EGL would pay Davis 60% of the total amount of the tariff EGL received for each shipment picked up or delivered by Davis. The Agreement further

1

required EGL to give Davis a summary of weekly transactions in a Driver/Agent Settlement Transaction List.[1]  Davis alleges that, over the course of the last 10 years, he and the putative class he seeks to represent were either paid less than the 60% they were entitled to under the Agreement, or sometimes not paid at all.

Section 4.07 of the Agreement provides that all settlements are final and forbids Davis to make any claim for additional settlement monies "unless Contractor notifies EGL in writing by certified mail of any discrepancies or additional claims within fifteen (15) days of settlement of computation of said settlement payment by EGL."  Davis does not claim that he notified EGL of any discrepancy or claim.

Section 6.07 of the Agreement further mandates arbitration for virtually any claim arising out of the Agreement and adds certain requirements to the dispute resolution process including that:

> [w]ritten notice of a demand for arbitration must be mailed to the other party and the American Arbitration Association within ninety (90) days of the occurrence of the claimed breach or other event giving rise to the controversy or claim. Failure to mail written notice of a demand for arbitration within such ninety (90) day period shall constitute an absolute bar to the institution of any proceedings and a waiver of the claimed breach...

---

[1] This list described the description of services provided, the date on which services were performed, the amount received by EGL (called the "tariff") and the amount rendered to Davis (called the "settlement").

Davis never served a written demand for arbitration on EGL.

EGL now moves to dismiss plaintiff's claims, contending that plaintiff was precluded from bringing this lawsuit by virtue of the clear and unambiguous language set forth in Sections 4.07 and 6.07 of the September 22, 2003 contract.  EGL contends that the Agreement mandates arbitration and, because Davis failed to make a timely demand for arbitration under the contract, dismissal is required.  Davis opposes the motion, contending that the arbitration clause is unenforceable because the Federal Arbitration Act (FAA) does not apply to employment contracts of truck drivers.

I.

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted.  The complaint must be liberally construed in the plaintiff's favor, and all facts pleaded in the complaint must be taken as true.  See Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir. 1986), cert. denied, 476 U.S. 1159 (1986).  This Court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of him claim which would entitle him to relief." Lowrey v. Texas A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's

complaint and are central to his claim. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citation omitted).  Here, the Court considers the Agreement as part of the pleadings.  However, both parties submit materials outside of the pleadings -- affidavits in support of their competing contentions regarding Davis' employment status.  In considering these affidavits, the Court must treat the defendant's motion to dismiss as one for summary judgment under Federal Rule of Civil Procedure 56(c).  See id.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment

4

is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

## II.

A.  Scope and Enforceability of the Arbitration Provision

Davis primarily contends that he is exempt from arbitrating his damages claim because -- contrary to the express terms of the Agreement -- he is not an independent contractor but an EGL employee and, as such is expressly excluded from coverage under the FAA.  EGL counters that the statutory exemption does not apply to Davis precisely because he is indeed an independent contractor and that, consequently, the parties' Agreement is not a transportation contract of employment.

The FAA generally declares valid and enforceable written

5

provisions for arbitration in any contract evidencing a transaction involving interstate commerce. See 9 U.S.C. § 2. Section 1 of the FAA, upon which Davis relies, excludes "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from the scope of the FAA. See id. at § 1; see also Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 119 (2001) (construing Section 1 to exempt from the FAA only contracts of employment of transportation workers).  Where, as here, the governing agreement contains a clause designating Texas law and does not expressly exclude the FAA, the FAA and Texas law, including Texas arbitration law, apply because Texas law incorporates the FAA as part of the substantive law of that state. See Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 338 n.7 (5th Cir. 2004) (citations omitted).

The parties agree that the enforceability of the arbitration clause turns on the plaintiff's employment status with EGL. If Davis was an independent contractor, as provided by the express terms of the Agreement, then the FAA does not bar the enforcement of the Agreement's arbitration provision. If, on the other hand, he was an EGL employee, then the FAA exclusion applies to bar application of the Agreement's arbitration provision.

B. Davis' Employment Status

As chosen by the parties to the Agreement, this Court applies Texas law to determine the plaintiff's employment status. To

6

determine whether a worker is an employee rather than an independent contractor, the Court applies the "control test" to analyze whether the employer has the right to control not merely the end sought, but the progress, details, and methods of operation of the work.  See Limestone Products Distribution, Inc. v. McNamara, 71 S.W.3d 308, 312 (Tex. 2002).  Texas courts measure the right to control by considering such factors as:  (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies, and materials to perform the job; (3) the worker's right to control the progress of the work except the final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job.  Id. (citations omitted).

"A written contract that expressly provides for an independent contractor relationship is determinative of the parties' relationship in the absence of extrinsic evidence indicating that the contract was a subterfuge, that the hiring party exercised control in a manner inconsistent with the contract provisions, or if the written contract has been modified by a subsequent agreement, either express or implied."  Northwinds Abatement, Inc. v. Employers Insurance of Wausau, 258 F.3d 345, 351 (5th Cir. 2001) (quoting Weidner v. Sanchez, 14 S.W.3d 353 (Tex. Ct.App.-Houston 2000)).

In this case, the Agreement clearly designates Davis as an

7

independent contractor, not an EGL employee.  The Agreement unqualifiedly (i) defines Davis as an independent contractor, (ii) specifies that Davis will not at any time be considered an EGL employee, and (iii) states conspicuously that, if he ever thinks he is not an independent contractor, he must notify EGL.[2]  As Texas law makes clear, however, the parties' characterization of this relationship is not wholly determinative.  Rather, application of the control test is dispositive of employment status.

Applying the control test to the summary judgment evidence, the Court agrees with EGL that Davis was an independent contractor.  Along with the litany of contractual references to independent contractor status, that designation is supported by the record.  Davis' work is best characterized as independent in nature.  And the indicia of Davis' control is supported by the record.  He was not guaranteed a certain amount of work and was free to serve other carriers.  He could, as he saw fit, employ drivers and control the aspects of their work.  It was Davis' decision to accept or reject dispatches offered by EGL.  He had the right to control the progress of the work, including that he could generally choose the

---

[2] The Agreement provides:

> IF AT ANY TIME DURING THE TERM OF THIS AGREEMENT CONTRACTOR IS OF THE OPINION THAT SOMETHING OTHER THAN AN INDEPENDENT CONTRACTOR RELATIONSHIP EXISTS BETWEEN CONTRACTOR AND EGL, CONTRACTOR SHALL IMMEDIATELY NOTIFY THE MANAGER OF SHARED RESOURCES OF EGL.

day and time of day to make deliveries. He could choose the routes traveled and the parking sites most suitable to accomplish his task. He could arrange for repair of his vehicle, which he leased to EGL.[3] This control exercised by Davis was not undermined by the Agreement's qualification of this right to control, which provided merely that he "fully and efficiently perform his obligation under the Agreement."

Other factors support this Court's finding that Davis was an independent contractor, not an EGL employee. The Agreement provides that Davis was not entitled to receive any benefits or compensation beyond the 60% of the tariff of each shipment picked up and delivered. EGL did not withhold income tax or social security taxes; rather, Davis was responsible for paying his own taxes. Davis was compensated per delivery transaction rather than paid on a salary or even a unit of time basis.

The Court agrees that there is nothing in Davis' affidavit to suggest that the Agreement was a subterfuge or that EGL exercised control in a manner inconsistent with the manner of control provided for in the Agreement. He says he was required to undergo a physical, take a drug test, wear an EGL uniform in making deliveries, portray the EGL insignia on his truck when making deliveries, keep new tires on his truck and file paperwork showing

---

[3] Although he leased his truck to EGL, he maintained its ownership and paid for its gasoline, repairs, and insurance.

regular oil changes. He also says that he was required to report between 6:00 and 7:00 a.m. to get his work assignments. These elements are not at all inconsistent with independent contractor status. Considering all the factors supporting Davis' right to control his work, these other work procedures, that Davis suggests support a finding of employment status, fail to create a factual dispute as to his status.

A party's otherwise unsupported, conclusory sworn statement is insufficient to create a factual dispute to defeat summary judgment. See Hathock v. Acme Truck Lines, Inc., 262 F.3d 522, 526-27 (5th Cir. 2001). Moreover, while some of these requirements may support an inference that *some* control was exercised by EGL, it is not the sort of control that is inconsistent with the status provisions of the Agreement. Furthermore, even considering that these certain requirements were imposed on Davis, the record shows that he maintained substantial discretion to determine the means for accomplishing pick-ups and deliveries -- as well as the discretion at the outset to accept or refuse a job in the first instance -- as the Court noted above. Accordingly, considering all of the indicia of work procedures together, the record discloses no genuine issue as to any material fact as to Davis' independent contractor status.

Having determined that Davis was an independent contractor, the FAA does not render the Agreement's arbitration provision

unenforceable. Further, Davis' claims, which seek to collect damages for non-payment and underpayment under the Agreement clearly "arise out of" the Agreement. Accordingly, having failed to allege or submit evidence of compliance with the settlement or arbitration clauses in the Agreement, Davis cannot escape the reach of the arbitration clause.

The Court finds that a valid agreement to arbitrate exists and the claims asserted fall within that agreement. Finally, the plaintiff fails to meet his burden to show that the arbitration clause is unconscionable under Texas law. See In re First Merit Bank, N.A., 52 S.W.3d 749 (Tex. 2001) (rejecting the plaintiffs' argument that arbitration clause was unconscionable because it forced the weaker party to arbitrate its claims, while permitting the stronger party to litigate certain claims).

Accordingly, defendant's motion to dismiss is deemed a motion for summary judgment and is GRANTED. The plaintiff's claims are hereby dismissed.[4]

---

[4] While it need not address the issue, the Court notes that, if Davis indeed represented the interests of putative class members, then all such putative class members purportedly entered into the Agreement with EGL and their claims should be dismissed as well. In any event, this case was never certified as a class action, nor has any showing made that certification could be appropriate. Accordingly, all the claims asserted are hereby dismissed.

New Orleans, Louisiana, September 12, 2006.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE